# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**WILLIAM F. DOSHIER and DOTSTRATEGY, CO.**            **PLAINTIFFS**

**v.**            Case No. 4:18-cv-00700-KGB

**TWITTER, INC.**            **DEFENDANT**

## ORDER

Before the Court is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3), or, alternatively, to transfer venue under 28 U.S.C. § 1404(a) filed by defendant Twitter, Inc. ("Twitter") (Dkt. No. 3). Plaintiffs William F. Doshier and dotStrategy, Co. ("dotStrategy") responded in opposition to the motion (Dkt. No. 5). Twitter filed a reply in further support of its motion (Dkt. No. 11). Plaintiffs filed a surreply (Dkt. No. 18). For the following reasons, in the interest of justice, the Court grants the motion to transfer venue (Dkt. No. 3).

### I. Procedural Background

Plaintiffs filed their complaint initially in the Circuit Court of Faulkner County, Arkansas (Dkt. No. 2). Twitter removed this action to this Court on September 21, 2018 (Dkt. No. 1). Twitter then filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) or, alternatively, to transfer venue under 28 U.S.C. § 1404(a) (Dkt. No. 3). Plaintiffs oppose the motion. Twitter asserts that venue is improper in this Court and that the Court should either dismiss this case or transfer it to the Northern District of California pursuant to 28 U.S.C. § 1404(a). Plaintiffs requested limited jurisdictional discovery regarding venue, but this Court by separate Order denied that request (Dkt. Nos. 15, 26). For the following reasons, the Court determines that this case should be transferred to the Northern District of California.

## II. Analyzing Venue

Federal Rule of Civil Procedure 12(b)(3) permits a party to raise the defense of improper venue by motion. In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Ambiguities must be resolved in favor of the nonmoving party. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). The moving party has the burden of establishing that venue is improper. *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947).

### A. Venue Generally

"[V]enue of all civil actions brought in district courts of the United States" is governed by 28 U.S.C. § 1391, which states:

> A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Venue is proper in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action only if there is no district in which an action may otherwise be brought as provided in § 1391. This means that the Court must determine whether venue is appropriate under subsections (1) and (2) of § 1391(b) before looking to subsection (3) to

determine if venue is proper. Further, where there are multiple claims involved, unless the doctrine of "pendent venue" applies, venue must be proper as to each claim. *See Bredberg v. Long*, 778 F.2d 1285, 1288 (8th Cir. 1985); *Travis v. Anthes Imperial Ltd.*, 473 F.2d 515, 528 (8th Cir. 1973).

With respect to § 1391(b)(1), the venue statute provides that a "natural person . . . [is] deemed to reside in the judicial district in which that person is domiciled," and "an entity with the capacity to sue and be sued . . . [is] deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(1), (2). The court looks to the time the claim arose to determine the propriety of venue when an entity is involved. *Great Am. Ins. Co. v. Louis Lesser Enters., Inc.*, 353 F.2d 997, 1001 (8th Cir. 1965).

With respect to § 1391(b)(2), "[t]he statute does not posit a single appropriate district for venue; venue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the claim occurred there," *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (citing *Setco Enters. Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994)), or that "a substantial part of property that is the subject of the action is situated" there, 28 U.S.C. § 1391(b)(2). The question is not which is the "best" venue, but "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003) (citing *Setco*, 19 F.3d at 1281).

### B. Where Twitter Resides And Where The Claims Occurred

Twitter contends that it is not a resident of Arkansas within the meaning of § 1391(c) (Dkt. No. 4, at 14). Further, Twitter asserts that the acts forming the basis of plaintiffs' claims did not occur in the Eastern District of Arkansas (*Id.*, at 16-21).

3

A defendant is deemed a resident under § 1391 in any district in which "such defendant is subject to the court's personal jurisdiction. . . ." 28 U.S.C. § 1391(c)(2). Arkansas's long arm statute is consistent with federal constitutional law and permits personal jurisdiction to the maximum extent allowed by the Due Process Clause of the Fourteenth Amendment. *Yanmar Co., Ltd. v. Slater*, 386 S.W.3d 439, 443 (Ark. 2012); Ark. Code Ann. § 16-4-101(B). Therefore, the only question is whether Twitter can be subjected to personal jurisdiction in Arkansas without offending the Due Process Clause of the Constitution.

Due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). Courts must consider the "quality and nature" of the defendant's activities. *Id.* at 319. Personal jurisdiction does not exist when the forum state "has no contacts, ties, or relations" to the defendant. *Id.* The Supreme Court has held that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In *World-Wide Volkswagen Corp. v. Woodson*, the Supreme Court concluded that "the defendant's conduct and connection with the forum State" were such that he could "reasonably anticipate being haled into court there." 444 U.S. 286, 297 (1980). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated,' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).

When deciding a personal jurisdiction issue, this Court considers five factors to determine the sufficiency of a defendant's contacts, with "the first three factors being of primary importance."

4

*Burlington Indus., Inc. v. Maples Indus., Inc*., 97 F.3d 1100, 1102 (8th Cir. 1996). The five factors as identified by the Eighth Circuit Court of Appeals are: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522-23 (8th Cir. 1996) (footnote omitted). The first three factors are closely related and can be considered together. *Id*. at 523.

Courts have elaborated on the third factor—the relationship of the cause of action to the contacts—to distinguish between general and specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-15 (1984). "General jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993*)*. General jurisdiction is appropriate for a non-resident corporate defendant whenever a corporate defendant's "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman,* 571 U.S. 117, 138-39 (2014) (internal quotations omitted). Typically, a corporate defendant is "essentially at home" in the state of its incorporation or in the state in which it has its principal place of business. *Id.* at 137. On the other hand, specific jurisdiction is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Burger King*, 471 U.S. at 472).

### 1.      General Jurisdiction Is Lacking

Twitter is a Delaware corporation with its principal place of business in San Francisco, California, and therefore resides outside of the Eastern District of Arkansas. Twitter maintains that it has no employees or offices in Arkansas and that it does not own any real property in Arkansas (Dkt. No. 4, at 16). On the record before the Court, the Court declines to find that Twitter has sufficient minimum contacts with the State of Arkansas to subject it to general jurisdiction in the State of Arkansas.

### 2.      Specific Jurisdiction Is Lacking

Further, Twitter asserts that the acts forming the basis of plaintiffs' claims did not occur in the Eastern District of Arkansas. Twitter maintains that plaintiffs do not and cannot allege that Twitter targets its platform at Arkansas and that, even if plaintiffs could make such a showing, plaintiffs' claims do not arise out of any Twitter action purportedly targeting Arkansas (Dkt. No. 4, at 16-19). As a result, Twitter maintains that this Court lacks specific jurisdiction and venue.

Plaintiffs contend that this Court should apply the analytical model set out in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), to determine whether Twitter's platform, which is a website, provides sufficient contacts for specific personal jurisdiction. *See Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 711 (8th Cir. 2003). Applying this model, plaintiffs maintain that Twitter does business over the internet by contracting with Arkansas advertisers and by distributing those advertisements to Arkansas residents who use the Twitter platform (Dkt. No. 6, at 29-30).

On the record before the Court, the Court declines to find that the acts that plaintiffs allege form the basis of this litigation occurred in the Eastern District of Arkansas. The Court also

determines that, based on the contacts alleged, the Court cannot exercise specific personal jurisdiction over Twitter.

Plaintiffs Mr. Doshier and dotStrategy are residents of the Eastern District of Arkansas (Dkt. No. 2, ¶¶ 73, 74). Plaintiffs purport to represent "all other similarly situated" in this purported class action (*Id.*, at 1). Mr. Doshier and the class members "acknowledge they entered into a binding agreement" with Twitter and reference the Twitter Master Services Agreement ("MSA") (*Id.*, ¶¶ 135-36). Plaintiffs also refer to the "Advertise on Twitter" page and its contents (*Id.*, ¶¶ 38-43). Plaintiffs placed ads or Promoted Tweets on Twitter to market products or services to other Twitter users (*Id.*, ¶ 44). Plaintiffs bring claims for violations of Arkansas Code Annotated § 4-88-107, § 4-75-201 *et seq.*, and § 4-75-309, alleging breach of contract and common law fraud under Arkansas law (*Id.*, ¶ 68).

Plaintiffs assert:

> 140. There are multiple events that give rise to the claims in this matter, as there are multiple Class members, each with at least one or more ads. The events giving rise to Twitter's liability in this matter are the same across the Class. Each and every Engagement for which Doshier and Class members have been charged by Twitter is its own stand alone event giving rise to the claims in this matter.
>
> 141. Hence, each ad, or Promoted Tweet, in which Doshier and Class members were charged by Twitter for fake engagements, will also be its own stand alone event giving rise to the claim for that specific ad, as Twitter invoiced Doshier and Class members for the total cost of each specific ad.

(*Id.*, ¶ 140-41). According to plaintiffs, Twitter defines an Engagement for a Promoted Tweet as "[t]he number of clicks, retweets, likes, follows and replies on a Promoted Tweet." (*Id.*, ¶ 18). Plaintiffs maintain that they, as Self-Serve Advertisers, should not be obligated to pay for fake Engagements but instead should only pay for real users to follow an account or retweet, like, reply, or click on a Promoted Tweet (*Id.*, ¶¶ 16-17).

When applying § 1391(b)(2) to determine where the acts forming the basis of plaintiffs' complaint occurred, the Eighth Circuit Court of Appeals has determined that courts should focus on the defendant's allegedly wrongful or relevant activities in the forum state, not on the effect of those activities on plaintiffs in the forum state. *Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014) (examining the holding in *Woodke,* 70 F.3d at 985).

Here, plaintiffs assert both breach of contract and common law fraud claims. To the extent plaintiffs assert breach of contract claims, Twitter maintains that the parties entered into valid forum selection and choice of law provisions in the Terms of Service (the "TOS") and the MSA (Dkt. No. 4, at 9-12). "Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' under [28 U.S.C.] § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., et al.*, 571 U.S. 49, 59 (2013).

Given that plaintiffs allege that each Engagement and charge by Twitter is its own event giving rise to plaintiffs' claims, the Court concludes that a substantial part of the events or omissions giving rise to plaintiffs' claims did not occur in this district. Although the harm might have been felt by Mr. Doshier and dotStrategy in this district, their contracting with Twitter occurred electronically with Twitter's principal place of business in California; the Engagement occurred wherever the Twitter user retweeted, liked, replied, or clicked; and Twitter initiated the charges about which plaintiffs complain likely at its principal place of business in California.

In fact, Twitter maintains that its self-serve advertising platform was created and is maintained in California; that its efforts to identify real from fake users and to suspend fake accounts was developed and is implemented by employees in California; that Twitter's website, the source of many of the allegedly deceptive statements according to plaintiffs, was created and

is maintained in California; and that Twitter's allegedly improper billing practices challenged by plaintiffs were developed and are maintained in California (Dkt. No. 4, at 17). Twitter has operated a website and advertising platform that is accessible nationwide, with no specific targeting by Twitter of Arkansas residents. These contacts are not sufficient even for specific jurisdiction in this context.

Because the only facts alleged in the complaint that provide a link to Arkansas describe actions taken by plaintiffs, the Court declines to find specific personal jurisdiction over Twitter. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) (rejecting contention that plaintiff alone can establish the link between the defendant and the forum and determining that defendant's conduct must form the necessary connection with the forum for the basis of jurisdiction); *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 823 (8th Cir. 2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum.") (citation omitted). The contacts between Twitter and the forum state must be contacts that defendant Twitter creates, not the unilateral activity of persons other than the defendant, including plaintiffs. *Walden*, 571 U.S. at 284-86. Contacts initiated by Twitter must form the necessary connection with the forum state to provide the basis for the Court's jurisdiction. *Id*.

### C. Applicability of § 1391(b)(3)

Twitter also contends that § 1391(b)(3) does not apply because most of the alleged acts or omissions giving rise to plaintiffs' claims took place in the Northern District of California, where Twitter resides (Dkt. No. 4, at 21). This Court agrees. As a result, venue is proper in that district, making § 1391(b)(3) inapplicable here. 28 U.S.C. § 1391(b)(3).

For all of these reasons, the Court concludes that venue in the Eastern District of Arkansas is not proper under § 1391.

### III. Transferring Venue

Pursuant to § 1406(a), if the court determines that venue is improper and that the case has been filed in the wrong division or district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466-67 (1962) (examining application of this provision). Although Twitter seeks dismissal due to improper venue, plaintiffs request transfer under this provision, if the Court determines that venue is improper in the Eastern District of Arkansas (Dkt. No. 5, ¶ 4).

Even if venue is proper in this district, pursuant to § 1404(a), "[f]or the convenience of parties and witnesses, and in the interest of justice" the court may transfer a case to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). Here, along with requesting dismissal under Rule 12(b)(3), Twitter requests in the alternative a transfer of venue to the United States District Court for the Northern District of California, if the Court determines that venue in the Eastern District of Arkansas is proper. The Court determines that transfer is warranted.

Twitter maintains that the parties entered into valid forum selection and choice of law provisions in the TOS and MSA (Dkt. No. 4, at 9-12). The TOS provides that "all disputes related to the TOS or Twitter's services "will be brought solely in the federal or state courts located in San Francisco County, California" and will be governed by the laws of the State of California (*Id.*, at 7). Further, according to Twitter, to place the advertisements at issue, plaintiffs also agreed to Twitter's MSA which also provides that "any dispute relating" to the MSA or between Twitter and the advertiser must be brought in San Francisco, California, and will be governed by California law (*Id.*, at 7-8). Twitter asks the Court to enforce these provisions, determine that they are

10

applicable to plaintiffs' claims, and transfer the case to the Northern District of California (*Id.*, at 22-27). Plaintiffs contend that the TOS and MSA do not control this action and should not apply. Plaintiffs argue, among other things, that the MSA does not contain a forum selection clause and that Twitter breached any such agreement first thereby rendering the agreement unenforceable as to plaintiffs (Dkt. No. 6, at 4-26).

The Eighth Circuit Court of Appeals "has expressed its inclination to find that federal law governs resolution of [the enforceability of a forum selection clause] in diversity cases." *U.S. Bank Nat'l Ass'n v. San Bernardino Pub. Emps.' Ass'n,* No. 13–2476, 2013 WL 6243946, at *2 (D. Minn. Dec. 3, 2013) (citing *Rainforest Café, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 (8th Cir. 2003)); *see also Atl. Marine Constr. Co.,* 571 U.S. at 59-61. Further, "[t]he parties do not argue that the outcome differs depending on the law applied, and so the [c]ourt evaluates the clause[s] under federal law." *U.S. Bank Nat'l Ass'n,* 2013 WL 6243946, at *2 (citation omitted).

"Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." *M.B. Rests., Inc. v. CKE Rests., Inc.,* 183 F.3d 750, 752 (8th Cir. 1999) (citing *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972)). When "the forum selection clause is the fruit of an arm's-length negotiation, the party challenging the clause bears an especially heavy burden of proof to avoid its bargain." *Servewell Plumbing, LLC v. Fed. Ins. Co.,* 439 F.3d 786, 789 (8th Cir. 2006) (citation and internal quotation marks omitted). "A forum selection clause is unjust or unreasonable if: (1) the clause is the product of fraud or overreaching; (2) the party would effectively be deprived of his day in court if the clause is enforced; and (3) enforcing the clause would contravene the public policy of the forum in which suit is brought." *St. Jude Med., S.C., Inc. v. Biosense Webster, Inc.,* No. 12–621, 2012 WL 1576141, at *3 (D. Minn. May 4, 2012) (citations omitted). "[T]he forum clause should

11

control, absent a strong showing that it should be set aside by the party resisting enforcement." *U.S. Bank Nat'l Ass'n,* 2013 WL 6243946, at *2 (citation and internal quotation marks omitted).

Having considered the parties' arguments and authorities cited, the Court concludes that transfer to the Northern District of California is warranted under § 1406(a), or in the alternative under § 1404(a), based on the facts and circumstances presented.

**IV.  Conclusion**

The Court determines that venue in the Eastern District of Arkansas is improper as to Twitter and that transfer is appropriate under § 1406(a). Even if venue in the Eastern District of Arkansas is proper, the Court determines that transfer is appropriate under § 1404(a). The Court directs the Clerk to transfer this case immediately to the Northern District of California.

So ordered this the 27th day of September, 2019.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge